UNITED STATED DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
LOUISVILLE DIVISION

| | | |
|---|---|---|
| JASON LYVERS | ) | |
| | ) | |
| Plaintiff | ) | |
| | ) | |
| v. | ) | Civil Action No. 3:25-cv-00479-GNS |
| | ) | |
| DAWN FOOD PRODUCTS, INC. | ) | |
| | ) | Removed from the Jefferson Circuit Court |
| Defendant | ) | Civil Action No. 25-CI-005275 |

**DEFENDANT'S ANSWER TO PLAINTIFF'S COMPLAINT
AND DEMAND FOR JURY TRIAL**

Defendant Dawn Food Products, Inc. ("Defendant" or "Dawn"), submits this Answer in response to Plaintiff's Complaint and Demand for Jury Trial. Defendant notes that, for ease of future reference, Plaintiff's Complaint allegations are set forth verbatim, with Defendant's responses following each allegation.

**JURISDICTION AND VENUE**

1. The Plaintiff lives and resides at 14105 Overlander Ct. Louisville, KY 40243.

    **ANSWER:** Defendant admits the allegations contained in this Paragraph.

2. The Defendant has its principal office located at 3333 Sargent Road, Jackson MI 49201 with Registered Agent Address of 421 West Main Street, Frankfort, KY 40601.

    **ANSWER:** Admitted.

3. Defendant's principal place of business is Jackson, Michigan. Defendant conducts its business in the Commonwealth of Kentucky and avails itself to the laws of the Commonwealth of Kentucky.

    **ANSWER:** Admitted.

4. All events that give rise to this cause of action occurred at Dawn Food Products, 6303 Kenjoy Dr., Louisville, Kentucky 40214.

**ANSWER:** Defendant admits Plaintiff was employed at its location at the listed address, but denies the remaining allegations and implications in this Paragraph, and denies liability to Plaintiff in any way.

5. Plaintiff's causes of actions are brought pursuant to the Kentucky Civil Rights Act, KRS §344 and §337 et seq., in addition, his damages exceed the threshold requirement of five-thousand dollars ($5,000.00) and therefore this court has proper jurisdiction over the matter.

**ANSWER:** Defendant admits that Plaintiff purports to bring this action under the referenced statutes and purports to claim damages in excess of any jurisdictional threshold, but denies the remaining allegations in this Paragraph, and further denies any implication that it has violated the referenced statutes, acted unlawfully toward Plaintiff, that Plaintiff has incurred any damages, or that it is liable to Plaintiff in any way.

## FACTUAL ALLEGATIONS

6. Plaintiff began working for Defendant in March 2013 at Dawn Food Products, Inc., serving initially as a Project Electrician holding a master's license. He was later promoted to Plant Engineer for Automation and Controls.

**ANSWER:** Defendant admits Plaintiff began working for Defendant in March 2013 as an electrician, and later assumed the role of Plant Controls Engineer.

7. Mr. Lyvers has Attention Deficit Disorder (ADD/ADHD) and had repeatedly informed Ms. Katie Land, the HR Representative, about his condition.

**ANSWER:** Denied.

8. Mr. Lyvers repeatedly requested reasonable accommodations for his condition, specifically workload adjustments and uninterrupted task management. These requests were repeatedly denied without proper justification.

**ANSWER:** Denied.

9. Throughout his employment, Mr. Lyvers filed several reports of safety issues to the company, his management, and the company's "Speak-Up" hotline.

**ANSWER:** Denied.

10. After reporting his concerns, Mr. Lyvers was unjustifiably denied a new lateral position in 2022, with the company falsely stating that he was not qualified for the position, despite the position being labeled as a "lateral move" by the company.

**ANSWER:** Denied.

11. Les Westfall was promoted over Mr. Lyvers, and Mr. Lyvers was required to report directly to Mr. Westfall, despite the two of them previously holding equal positions.

**ANSWER:** Admitted.

12. In January 2023, Mr. Lyvers again approached HR Representative Katie Land for accommodations, or at least assistance. Mr. Lyvers detailed how the excessive workload and frequent disruptions aggravated his ADD/ADHD, yet no accommodations were offered.

**ANSWER:** Denied.

13. After this January 2023 denial of accommodations or any attempt at engaging in the interactive process, Mr. Lyvers was excluded from management and safety meetings without justification, despite his job and workload responsibilities remaining unchanged.

**ANSWER:** Denied.

14. Plaintiff's subordinate was promoted over him, and Mr. Lyvers was tasked with training another engineer who eventually replaced him in his role.

**ANSWER:** Denied.

15. After this promotion, Mr. Lyvers complained to the company hotline about his working conditions, being passed over for a promotion, and lack of accommodations for his disability.

**ANSWER:** Denied.

16. After this complaint, Mr. Lyvers was asked by the office receptionist to make a copy of his office key, raising concerns in Plaintiff's mind about his job security after these events.

**ANSWER:** Defendant lacks knowledge or information sufficient to form a belief as to the truth of the allegations in this Paragraph and therefore denies the same.

17. Following these events, Mr. Lyvers was involved in a verbal altercation with Leann Clemmons regarding ongoing safety issues.

**ANSWER:** Denied.

18. During this exchange, Ms. Clemmons physically grabbed Plaintiff's arm, prompting him to firmly say "Get your hand off me."

**ANSWER:** Denied.

19. The confrontation escalated as they moved roughly twenty feet away from other employees.

**ANSWER:** Denied.

20. Mr. Lyvers reiterated that systemic changes were needed and that current management lacked the qualifications to lead.

**ANSWER:** Denied.

21. Feeling threatened, Mr. Lyvers walked away and returned to his office, locking the door behind him. The newly attempted office manager attempted to enter, by Mr. Lyvers refused and asked them to leave.

**ANSWER:** Defendant lacks knowledge or information sufficient to form a belief as to the truth of the allegations in this Paragraph, and therefore denies the same.

22. Plaintiff reported this incident to the Speak-Up hotline.

**ANSWER:** Defendant admits Plaintiff reported an incident involving him and Ms. Clements to the Speak-Up hotline.

23. After reporting these concerns to the company hotline, Mr. Lyvers had a meeting with HR Representative Katie Land, the Plant Director, and Les Westfall, where Mr. Lyvers reiterated his concerns regarding safety, workload, and denied accommodations.

**ANSWER:** Denied.

24. During this meeting, Defendant attempted to change Plaintiff's job title and schedule, while assigning him to a different shift without Plaintiff's consent.

**ANSWER:** Denied.

25. At the end of this meeting, Mr. Lyvers was instructed that he could leave early due to the upsetting nature of the meeting and that the parties would reconvene that following Monday. So Mr. Lyvers left work early that day at the instruction of Mr. Westfall and Ms. Land.

**ANSWER:** Defendant admits Plaintiff left early, but denies the remaining allegations in this Paragraph.

26. Several hours later, Defendant cut off Plaintiff's access to his company phone and email without warning.

**ANSWER:** Defendant admits it cut off Plaintiff's access to company phone and email but denies the remaining allegations in this Paragraph.

27. Ms. Land then contacted Mr. Lyvers via his personal email, informing him that he was suspended pending an unexplained investigation.

**ANSWER:** Denied.

28. On July 31, 2023, Plaintiff was terminated under the guise that he had violated the company's "circle of excellence," despite no prior performance or disciplinary issues.

**ANSWER:** Denied.

## COUNT I: DISCRIMINATION BASED ON DISABILITY

29. Plaintiff hereby incorporates each and every allegation of paragraphs one (1) through twenty-eight (28) above, as if fully set forth within particularity herein:

**ANSWER:** Defendant incorporates its answers to Paragraph one (1) through twenty-eight (28) of its Answer to Plaintiff's Complaint, and denies any liability to Plaintiff.

30. Ky. Rev. Stat. Ann. § 344.040 states, in part, as follows: "It is unlawful practice for an employer: (1) to fail or refuse to hire, or to discharge any individual, or otherwise discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's disability; and (2) to limit, segregate, or classify his employees in any way which would deprive or tend to deprive an individual of employment opportunities or otherwise affect his status as an employee because of such individual's disability.

**ANSWER:** Defendant denies this Paragraph accurately quotes the cited statutory language, and further denies any liability to Plaintiff.

31. To establish a prima facie case of disability discrimination, Plaintiff must show: (1) the he has a disability within the meaning of KRS 344.010(4); (2) that, despite the disability, he was otherwise qualified to perform the essential functions of the job in question, cither with or

without reasonable accommodation; (3) that he suffered an adverse employment action because of his disability; and (4) that he was replaced by a non-disabled person OR that similarly situated non-disabled employees were treated more favorably.

**ANSWER:** This Paragraph calls for a legal conclusion for which no response is required. Answering further, Defendant denies it violated the Kentucky Civil Rights Act in any way.

32. Plaintiff is diagnosed with ADD/ADHD and as such, has a disability within the meaning of KRS 344.010(4).

**ANSWER:** Denied.

33. Despite his medical diagnosis, Plaintiff was qualified to perform and did perform the essential functions of his job without reasonable accommodation.

**ANSWER:** Denied.

34. Plaintiff was passed over a promotion for a similarly situated non-disabled employee because of his disability.

**ANSWER:** Denied.

35. Additionally, Plaintiff was terminated because of his disability, as he had raised numerous concerns with his HR representative who refused to offer any accommodations or engage in the interactive process required by law.

**ANSWER:** Denied.

36. Plaintiff was replaced by a non-disabled person, and was treated less favorably than Mr. Westfall because Plaintiff has a disability and Mr. Westfall does not.

**ANSWER:** Denied.

## COUNT II: RETALIATION

37. Plaintiff hereby incorporates each and every allegation of paragraphs one (1) through thirty-six (36) above, as if fully set forth within particularity herein:

**ANSWER:** Defendant incorporates its answers to Paragraph one (1) through thirty-six (36) of its Answer to Plaintiff's Complaint, and denies any liability to Plaintiff.

38. To establish a prima facie case of retaliation, a Plaintiff must establish: (1) he engaged in a protected activity; (2) he was disadvantaged by an act of his employer; and (3) there was a causal connection between the activity engaged in and the employer's act.

**ANSWER:** This Paragraph calls for a legal conclusion for which no response is required. Answering further, Defendant denies unlawfully retaliating against Plaintiff in any way.

39. Plaintiff was engaged in a protected activity every time he contacted the Speak-Up hotline to raise his concerns about various ongoing safety issues.

**ANSWER:** This Paragraph calls for a legal conclusion for which no response is required. Answering further, Defendant denies unlawfully retaliating against Plaintiff in any way.

40. Plaintiff was also engaged in a protected activity every time he contacted HR Representative Katie Land about accommodations for his disability.

**ANSWER:** Denied.

41. He was disadvantaged when he was passed over for a promotion because of his frequent hotline tips.

**ANSWER:** Denied.

42. He was further disadvantaged when he was terminated from the company.

**ANSWER:** Denied.

43. After having a meeting with HR and the Plant Manager about his safety concerns and denial of accommodations for his disability, Plaintiff was immediately suspended and

subsequently terminated from his position. Thus, a causal connection exists between Plaintiff's involvement in a protected activity and his termination.

**ANSWER:** Denied.

**COUNT III: WRONGFUL DISCHARGE IX VIOLATION OF PUBLIC POLICY**

44. Plaintiff hereby incorporates each and every allegation of paragraphs one (1) through . forty-three (43) above, as if fully set. forth within particularity herein:

**ANSWER:** Defendant incorporates its answers to Paragraph one (1) through forty-three (43) of its Answer to Plaintiff's Complaint, and denies any liability to Plaintiff.

45. Kentucky recognizes a narrow public-policy exception to the terminable-at-will doctrine. To establish a cause of action for wrongful discharge, an employee must show that the termination was contrary to public policy evinced by a constitutional or statutory provision.

**ANSWER:** This Paragraph calls for a legal conclusion for which no response is required. Answering further, Defendant denies violating the law with regard to Plaintiff in any way.

46. The Kentucky Supreme Court in <u>Grzyb</u> has recognized two situations in which grounds for discharging an employee are so contrary to public policy as to be actionable absent legislative statement prohibiting the discharge: (1) where the alleged reason for the discharge of the employee was the failure or refusal to violate a law in the course of employment; and (2) when the reason for a discharge was the employee's exercise of a right conferred by well-established legislative enactment.

**ANSWER:** This Paragraph calls for a legal conclusion for which no response is required. Answering further, Defendant denies violating the law with regard to Plaintiff in any way.

47. Although Mr. Lyvers did not make a direct complaint about work-safety issues to the Occupational Safety and Health Program, as authorized by KRS 338, Mr. Lyvers was discharged for his numerous complaints regarding workplace safety issues.

**ANSWER:** Denied.

48. Directly after a meeting about such concerns, Mr. Lyvers was suspended and ultimately terminated.

**ANSWER:** Denied.

49. Defendant's actions directly violated Kentucky's recognized public policy interests in maintaining a safe workplace.

**ANSWER:** Denied.

## PRAYER FOR RELIEF

Plaintiff, Mr. Lyvers, hereby incorporates all preceding paragraphs as if fully set forth with particularity herein.

WHEREFORE, Mr. Lyvers, prays this Court:

1. Declare Defendants' conduct is in violation of Mr. Lyvers's rights;

2. Award Mr. Lyvers compensatory damages in such amount as shall be proven at trial for his economic, personal, and other losses;

3. Award Mr. Lyvers damages in an amount to be proven at trial for humiliation embarrassment, apprehension about his future, and emotional stress, which the Defendant caused Mr. Lyvers by their illegal, discriminatory, and wrongful acts towards him;

4. Award Mr. Lyvers costs, interest, and attorneys' fees pursuant to KRS § 344; and

5. Grant him such further relief as this Court may deem just and proper.

**ANSWER:** Defendant admits Plaintiff is seeking the requested relief, but Defendant denies it has violated any laws, denies it is liable to Plaintiff in any way, at equity or at law, and denies the Plaintiff is entitled to any relief.

## JURY DEMAND

Plaintiff, Mr. Lyvers, demands a jury to try all issues triable by jury.

**ANSWER:** Defendant admits Plaintiff demands a trial by jury, but Defendant objects to a jury determination of any equitable issues in this action or any other issues not triable by a jury.

### *Second Defense*

To the extent an answer or response may be required which is not set forth herein, Defendant generally denies any allegations contained within Plaintiff's Complaint not expressly admitted.

### *Third Defense*

Some or all of Plaintiff's allegations fail to state a claim upon which relief may be granted.

### *Fourth Defense*

Subject to a reasonable opportunity for investigation and discovery, Plaintiff has failed to mitigate his damages.

### *Fifth Defense*

Subject to a reasonable opportunity for investigation and discovery, Plaintiff's remedies are limited by the doctrine of after-acquired evidence.

### *Sixth Defense*

Plaintiff's common law claim is pre-empted by the administrative complaint and remedy procedures of the KOSHA statute.

### *Seventh Defense*

Subject to investigation and discovery, any accommodations that Plaintiff alleges he requested are unreasonable under the KCRA and/or would constitute an undue hardship/burden on the Defendant.

### *Eighth Defense*

Defendant's actions as they related to Plaintiff were based on non-discriminatory, non-retaliatory, legitimate business reasons not related to any purported disability as to Plaintiff or for any other unlawful basis.

### *Ninth Defense*

The alleged acts or omissions of Defendant were not the cause in fact or legal cause of any alleged damages to Plaintiff.

### *Reservation of Rights*

Defendant reserves the right to assert additional affirmative defenses as Plaintiff's claims are clarified during the course of this litigation.

WHEREFORE, Dawn respectfully requests that Plaintiff take nothing by way of his Complaint, that this matter be dismissed in its entirety, that judgment be entered in Dawn's favor, that Dawn be awarded the costs incurred in its defense of this matter, and that Dawn be granted all other relief deemed necessary and appropriate by the Court.

Dated: September 5, 2025

Respectfully submitted,

**BARNES & THORNBURG LLP**

 /s/ *Anthony K. Glenn*
Anthony K. Glenn (Atty No. 95959)
BARNES & THORNBURG, LLP
11 South Meridian Street
Indianapolis, Indiana 46204
Phone:   (317) 236-1313
Fax:   (317) 231-7433
Email:   anthony.glenn@btlaw.com

*Attorneys for Defendant Dawn Food Products, Inc.*

## CERTIFICATE OF SERVICE

I hereby certify that on the 5th day of September, 2025, a copy of the foregoing was filed electronically. Notice of this filing will be sent to the following parties/counsel of record by operation of the Court's electronic filing system:

Samuel G. Hayward Jr.
Tilford Dobbins & Schmidt PLLC
Louisville, Kentucky 40202
(502) 584-1000
sghayw@gmail.com

 /s/ *Anthony K. Glenn*
Anthony K. Glenn